AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Nebraska

| | | |
|---|---|---|
| United States of America<br>v.<br><br>LUIS MORENO-MORENO<br>*Defendant(s)* | ) ) ) ) ) ) ) | Case No. 8:25MJ593 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of October 22, 2025, in the county of Douglas in the District of Nebraska, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 111(a)(1) & (b) | Assaulting, Resisting, or Impeding Certain Officers or Employees |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

Quintin Erdman D.O.# 5821

*Complainant's signature*

Quintin A. Erdman, Deportation Officer

*Printed name and title*

☐ Sworn to before me and signed in my presence.

☑ Sworn to before me by telephone or other reliable electronic means.

Date: 10/29/2025

*Judge's signature*

City and state: Omaha, Nebraska

MICHAEL D. NELSON, U.S. Magistrate Judge

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LUIS MORENO-MORENO,<br><br>Defendant. | 8:25MJ593 |

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT FOR LUIS MORENO-MORENO**

I, Quintin A. Erdman, a Deportation Officer (DO) employed by the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) duly appointed and sworn according to the law and at the time of the events herein was acting in his official capacity depose and state as follows:

**INTRODUCTION AND BACKGROUND**

1. Your affiant was a federal law enforcement officer with the United States District Court, for the District of Nebraska, from November 2010 until September 2020. On September 13, 2020, your affiant was appointed as a Deportation Officer and subsequently completed the Basic Immigration Enforcement Training Program as required by 8 CFR 287.1(g). Your affiant is assigned to the Omaha ICE/ERO office and currently part of the fugitive operations team.

2. Deportation Officers are empowered to interrogate and arrest with or without warrant, any person believed to be an alien in the United States in violation of law, pursuant to Section 287 of the Immigration and Nationality Act (INA) (8 U.S.C. § 1357). This affidavit is based on your affiant's personal knowledge and information provided to him by other law enforcement officers involved in this investigation.

**PROBABLE CAUSE**

3. In my official capacity, your affiant made inquiries regarding **Luis MORENO-Moreno**'s (hereinto: **defendant**) alienage and potential removability. Your affiant reviewed DHS databases and determined the **defendant** to be a citizen and native of Mexico, that is unlawfully present in the United States and has been convicted of Attempted Discharging a Firearm While in or in Proximity of Any Motor Vehicle at any Person, Dwelling, Building, Structure, Occupied Motor Vehicle, and Attempted Use of a Deadly Weapon (Gun) to Commit a Felony. Your affiant identified the **defendant** as being assigned a unique alien registration number (ARN, A-Number) XXX-XXX-100, and date of birth XX/XX/2006.

4. Your affiant knows the **defendant** was encountered by United States Customs and Border Protection on May 20, 2022. Your affiant reviewed the **defendant**'s A-File which shows the **defendant** was issued a Notice to Appear, stating, "Alien Registration: This copy of this Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times."

5. On or about October 4, 2025, your affiant learned of the **defendant**'s presence in Omaha, Nebraska, and developed probable cause to arrest the **defendant** for violations of the INA following a conviction for a gun offense. On October 3, 2025, the defendant was convicted in the District Court of Douglas County, Nebraska, of Attempted Discharging a Firearm While in Proximity of any Motor Vehicle at Any Person, Dwelling, Building, Structure, Occupied Motor Vehicle, and Attempted Use of a Deadly Weapon (Gun) to Commit a Felony in CR24-5890. Your affiant reviewed court records and investigative reports relating to the conviction in CR24-5890 stating that on November 15, 2024, the **defendant** used a firearm and fired rounds at a vehicle and a building in Omaha, Nebraska.

6. Your affiant reviewed Omaha Police Department (OPD) reports and lab reports related to the investigation concerning the November 15, 2024, incident. The investigation indicates that on November 15, 2024, OPD officers were dispatched to the area of N. 49th Street and NW Radial Highway in Omaha, Nebraska, relating to shots fired. A vehicle was hit by the gunfire. OPD located bullet casings near 2515 N. 49th Avenue. Officers located a bullet hole in the detached garage at 4925 Ohio Street and a projectile stuck in a fence. OPD recovered multiple cartridge cases stamped 23 Win 9mm Luger. The investigators located video surveillance related to the shooting. Officers became aware of a vehicle leaving the area of the shooting at a high rate of speed. The vehicle stopped in an alleyway between N. 37th Street and N. 36th Avenue. Officers activated emergency lights and three occupants fled on foot. The front seat passenger, who fled on foot, was the **defendant**. Officers located and arrested the **defendant** along with the two other occupants. When interviewed, the **defendant** admitted to shooting at the victim's vehicle. Investigators searched for, but could not locate, the firearm the **defendant** used. The OPD Forensic Investigation report concluded that the rounds were likely fired from a Hi-Point firearm.

7. Your affiant reviewed the court records relating to the **defendant**'s conviction in CR24-5890, and found the court sentenced the **defendant** to three years' probation on both counts. Your affiant obtained contact information for the supervising probation officer.

8. On or about October 7, 2025, your affiant reviewed electronically available probation records and located the **defendant**'s address at 4240 Nebraska Avenue in Omaha, which appeared to be where the **defendant**'s mother lived. Your affiant reviewed the **defendant**'s United States Citizenship and Immigration Services (USCIS) records, which also listed the **defendant**'s address as 4240 Nebraska Avenue in Omaha. Your affiant surveilled the address and observed a "for-sale" sign in the front yard, and it appeared to be uninhabited. Your affiant possesses experience interacting with the Douglas County Adult Probation, specifically

the chief probation officer, and knows their office will generally not provide information or assistance to immigration officials. Your affiant contacted the **defendant**'s assigned probation officer and asked for assistance in obtaining his last known address. The probation officer reported to your affiant that the **defendant** recently moved in with his girlfriend at 3020 Franklin Street in Omaha. Your affiant surveilled the address on multiple occasions and did not see or obtain evidence that the **defendant** lived at the reported location. Your affiant periodically reviewed DHS indices and open-source records to locate the **defendant**'s whereabouts. Your affiant located no records of a change in address for the **defendant**.

9. On October 21, 2025, your affiant learned of a hearing scheduled in Omaha, Nebraska, for October 22, 2025, where the **defendant** was petitioning the Douglas County District Court for permission to relocate to Portland, Oregon. Your affiant emailed the chief probation officer and the assigned probation officer a copy of the I-200 Warrant for Arrest of Alien, naming the **defendant**, advising both officers of the hearing, and requested assistance in locating the **defendant**. The assigned probation officer contacted your affiant and advised of a scheduled 11 a.m. meeting at the probation office on October 22, 2025. The probation officer asked for your affiant to make the arrest outside of the probation office in a discrete manner. Based on your affiant's experience with Douglas County Adult Probation, your affiant believed the only way to effect an arrest before the **defendant** moved to Portland, Oregon, was to comply with the probation officer's request.

10. On Tuesday, October 22, 2025, your affiant, assisted by DO Madill and DO Doeden, encountered the **defendant**, outside the Nebraska District 4A Blondo Reporting Center located at 1821 N 73rd Street, Omaha, Nebraska. Your affiant, DO Madill, and DO Doeden, wore plain clothes to the arrest location as had been at the request of the probation officer. Your affiant observed the **defendant** quickly exit a vehicle and enter the probation office at approximately 10:55 a.m. for his scheduled appointment. Your affiant could not affect the arrest before the **defendant** entered the building due to the speed at which he exited the vehicle and entered the building. Your affiant waited outside close to the door in anticipation of his departure. At approximately 11:30 a.m., your affiant observed the **defendant** exit the probation office. Your affiant, along with DO Doeden and DO Madill, approached the **defendant** outside of the office near the exit door at a normal walking pace. Your affiant identified the **defendant** by name. Your affiant said that he was an immigration officer with a warrant for the **defendant**'s arrest, in the English language. Your affiant told the **defendant** he was under arrest. The **defendant** responded that he was just there for a probation meeting, in the English language. Your affiant told the defendant again that he had a warrant for his arrest, he was being arrested on immigration charges, and directed him to turn around and put his hands behind his back. The **defendant** backed away from your affiant towards the side of the building. Your affiant reached for the **defendant**'s right arm, and the **defendant** tensed his arm and pulled away. Your affiant, DO Doeden, and DO Madill converged on the **defendant** and grabbed his arms to place the **defendant** in restraints while continuing to give verbal commands to stop resisting and place his hands behind his back. The **defendant** pushed your affiant away and began to yell "immigration." The **defendant** stated, "I have a son." Your affiant reengaged and began

grabbing on the **defendant**'s arm trying to move it behind his back to place a handcuff on his wrist. Your affiant told the defendant to stop resisting. The **defendant** pushed and shoved your affiant, DO Doeden, and DO Madill.

11. Two females, later identified as the **defendant**'s mother (**Maria** Natividad MORENO-Moreno) and girlfriend (**Juliana** Marily JIMENEZ-Reyes), ran up to where your affiant, DO Doeden, and DO Madill were trying to restrain the **defendant**. **Maria** and **Juliana** began to shove, grab, and pull your affiant, DO Doeden, and DO Madill to prevent the arrest of the **defendant**. The **defendant** made a statement that "immigration is trying to take me," in the English language. Your affiant heard **Maria** yell "immigration" in response and "no". The **defendant** continued resisting arrest by pushing and tugging on officers. DO Doeden grabbed the **defendant**'s left arm, and the **defendant** struck DO Doeden's right arm with his fists closed multiple times trying to break his grip. DO Doeden successfully placed the **defendant**'s right wrist in a handcuff as they continued the struggle to restrain the defendant. DO Doeden and DO Madill maneuvered the **defendant** into a position where your affiant could apply a handcuff on the **defendant**'s left arm. **Maria** grabbed onto DO Doeden's arm leaving scratch marks. Your affiant tried to place a restraint on the **defendant** but was pulled back by one of the females and then had the handcuff ripped from his hand by **Maria**. Your affiant told both females "get back" on multiple occasions and that he was "immigration." Your affiant then started towards **Maria** to acquire the stolen handcuffs. **Maria** turned away from your affiant, began to run, and tripped, falling to the ground. Your affiant, seeing **Maria** appear to be incapacitated, returned his attention to restraining the **defendant**. Your affiant approached the defendant and **Juliana** stepped in front of him. Your affiant pushed **Juliana** out of his way, told her he was immigration, he had a warrant, and to stop. **Juliana** stayed out of your affiant's way and your affiant reengaged the **defendant**.

12. DO Doeden used an arm-bar technique to take the **defendant** to the ground with DO Madill's assistance. DO Madill and your affiant continued to try and gain control of the **defendant**'s other arm and succeeded in placing the handcuff on the other arm. DO Doeden and Madill helped the **defendant** to his feet, and DO Doeden escorted him to your affiant's vehicle. DO Doeden placed the **defendant** into the rear passenger seat and applied the seatbelt. **Maria** approached your affiant, and your affiant grabbed the stolen handcuffs from her hand. **Maria** then ran away from your affiant towards the parking lot and remained a distance away, observing.

13. DO Madill and your affiant focused on **Juliana** due to her proximity. Your affiant told **Juliana** she was under arrest and placed handcuffs on her. DO Doeden heard the yelling and left the vehicle to assist your affiant and DO Madill. DO Madill placed **Juliana** into the vehicle, and your affiant turned his attention to **Maria** who was a distance from your affiant. Your affiant told **Maria** that she was under arrest, and she turned and ran towards her vehicle that was parked in front of the entrance of the probation office. **Maria** entered the vehicle and began to leave the parking lot before DO Doeden and your affiant could make an arrest. **Maria** quickly left the parking lot, nearly striking a parked vehicle, heading towards Blondo Street.

14. Your affiant returned to his vehicle while DO Doeden and DO Madill placed **Juliana** into DO Madill's vehicle. Your affiant returned to his vehicle and did not see the **defendant** inside the vehicle. A person in the area advised that someone ran away and pointed south of your affiant's location. At some point during the arrest, an unknown person reported an assault in progress, and officers with the Omaha Police Department (OPD) responded to the area. DO Madill and DO Doeden left the probation office in their vehicles and began to search for the **defendant**. Your affiant approached one of the responding OPD officers, identified himself as an immigration officer, and told them about the events and the **defendant**'s flight from the back of the vehicle. Multiple OPD officers responded to the area and assisted with the search. Your affiant provided a description of the **defendant**'s appearance and biographical information, and the information was broadcast to responding officers.

15. DO Madill located **Maria**, on foot, near a restaurant (Burger King, 1902 N 72nd Omaha, Nebraska). DO Madill observed, from a distance, **Maria** appearing to be searching for the **defendant**. DO Madill requested DO Doeden's presence to make an arrest. DO Doeden arrived at DO Madill's location, and they arrested **Maria** and placed her in the rear of DO Madill's vehicle.

16. OPD officers deployed a drone and called for ABLE-1 arial support to assist in the search of the **defendant**. Your affiant, DO Doeden, and DO Madill and additional officers from the Omaha ICE/ERO office continued to search the area looking for the **defendant**. Your affiant heard over the radio that arial units spotted an individual matching the **defendant**'s description. Your affiant heard over the broadcast the person on foot was handcuffed and had his hands in front of him. OPD officers broadcasted the **defendant**'s location near 74th Street and Seward Street. DO Doeden arrived at the location, and OPD assisted DO Doeden with securing the defendant and putting him into a vehicle. OPD assisted ICE/ERO by transporting the **defendant** in a caged vehicle to the Omaha ICE/ERO office for processing.

17. At the Omaha ICE office, your affiant observed that DO Doeden had scratch marks on his arm and had scrapes on both of his knees. Your affiant observed that DO Madill had scrapes on one of his hands. DO Doeden and DO Madill complained of knee pain resulting from the arrest of the **defendant**. Your affiant asked the **defendant** if he needed emergency medical care, and the **defendant** replied "no." The **defendant** requested a bandage for a scrape on his elbow. Your affiant determined, based on the response from the **defendant**, his observation that the **defendant** was oriented, alert, and had full motor function, that he did not require emergency medical care. DO Madill, with your affiant as a witness, formally Mirandized the **defendant** in the Spanish language, and he made voluntary statements. The **defendant** admitted to understanding your affiant and officers were immigration agents at the time of the initiation of the arrest. The defendant stated to DO Madill he initially ran towards McDonalds (1925 N. 72nd Street, Omaha, Nebraska) trying to get someone to help him. The **defendant** stated to DO Madill that he heard the responding officers' sirens, got scared, and ran away from

the McDonalds parking lot. The **defendant** advised DO Madill that he currently lived at 2007 Wirt Street, Omaha, Nebraska.

## CONCLUSION

18. On October 22, 2025, the **defendant** pushed your affiant, DO Doeden, and DO Madill, struck DO Doeden with closed fists causing pain, and resisted causing DO Doeden and DO Madill to fall causing pain and bodily injury to DO Doeden's knees and DO Madill's hand. Based on these facts, your affiant believes there is **PROBABLE CAUSE** that the **defendant**, **Luis MORENO-Moreno,** inflicted bodily injury, assaulted, resisted, opposed, impeded, intimidated, or interfered with federal law enforcement officers while they were performing their official duties, in violation of Title 18 United States Code, Section 111(a)(1) and (b).

Affiant states that all statements contained in this affidavit are true and correct to the best of his knowledge.

Quintin Erdman DO.#5821

Quintin A. Erdman, Deportation Officer
Department of Homeland Security
Immigration and Customs Enforcement

SUBSCRIBED and SWORN to before me by telephone or other reliable electronic means this 29th day of October, 2025.

MICHAEL D. NELSON
District of Nebraska